

December 19, 2019

**VIA ELECTRONIC MAIL AND UPS NEXT DAY AIR**
U.S. Department of Homeland Security
U.S. Immigration & Customs Enforcement
Freedom of Information Act Office
500 12th Street SW, Stop 5009
Washington, D.C. 20536-5009
ice-foia@dhs.gov

**Re: Freedom of Information Act Request**

Dear FOIA Officer:

The Immigrant Defense Project ("IDP") and the New Sanctuary Coalition ("NSC") (collectively, "Requesters") file this request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for information regarding the Department of Homeland Security ("DHS")'s Immigration and Customs Enforcement ("ICE") policies and protocols concerning the supervision and monitoring of immigrants pursuant to Orders of Supervision and other alternatives to detention.

IDP is a national expert resource and advocacy organization that provides training, advice, and support to immigrant communities, legal practitioners, and advocates seeking to advance the rights of noncitizens, and monitors the intersection of the criminal legal system and immigration system. It disseminates information about these issues to policy makers, attorneys, the general public, and affected communities. These materials routinely include information obtained in FOIA requests.[1] NSC is a New York City-based coalition of individuals and faith communities that directly supports immigrants facing deportation through community support, activism, and pro se

---

[1] *See, e.g.,* Immigrant Defense Project, ICE Raids FOIA, https://www.immigrantdefenseproject.org/raids-foia/ (last accessed Nov. 25, 2019) (disseminating documents on the recent history of ICE trainings and practices around home raids obtained via FOIA).

Freedom of Information Act Request
December 17, 2019
Page 2

legal clinics. It provides legal support and referrals through programs and clinics staffed by volunteer lawyers and trained laypeople who spread knowledge of immigrants' rights.

### A. Purpose of Request

The purpose of this request is to obtain information for the public about ICE policies, practices, and procedures related to their Population Management, Alternatives to Detention, and Order of Supervision programs, as well as any other supervision programs. As organizations that provide direct, no-cost services to immigrant communities, legal practitioners, advocates, and activists seeking to advance the rights of noncitizens, IDP and NSC have an interest in understanding the implementation and impact of these policies, how they were developed and what goals agencies have in enforcing them.

The current procedures and policies governing ICE supervision programs are not publicly known and have been characterized by egregious supervision requirements that have far-reaching consequences. For example, the following demands have recently been made of noncitizens placed in/participating in these supervision programs:

- Mother of three, who struggles with dementia, asked to provide the names and addresses of all her children and whether or not she lives with them, and asked to submit copies of children's birth certificates who are undocumented;
- Man with family in home country asked to conscript his family's assistance in obtaining a new birth certificate for purposes of obtaining a travel document, although his family lives hours away from the closest government building that could provide such documents and the country itself is marred by civil unrest;
- Man ordered released from ICE custody on bond is instead released with an ankle monitor, weekly house arrest and biweekly check-ins through contracted supervision program;
- Stateless refugee whose most recent supervision order started in 2004 and who has reported over 50 times on that order, including 4 weeks in a row, threatened with immediate detention by ICE officers unless the refugee did the impossible and obtained travel documents; and
- ICE officer gave stateless woman a birth certificate that did not have her correct identifying information, told her to apply for a passport, and threatened her with detention if the woman refused.

Such demands have been unexpected, exceed the four corners of Orders of Supervision, and have sweeping implications for community members, citizen and noncitizen alike. Knowledge of formal government policies and procedures empowering ICE to make such requests is essential to preparation for check-ins. As stated by a recent article in *The Washington Post*, "[f]or the people presenting themselves to immigration authorities, including more than a million already

2

Freedom of Information Act Request
December 17, 2019
Page 3

facing final orders of removal from the United States, each check-in can feel perilous."[2] The information sought in this request will provide greater clarity to those checking-in, and will also enable public oversight and monitoring of ICE's supervision tactics.

### B. Definitions

**Supervision Program(s):** For purposes of this request, the term "supervision programs" refers to Orders of Supervision ("OSUPs") and Alternative to Detention ("ATD") programs – including but not limited to the Intensive Supervision Appearance Program ("ISAP"), technology-only monitoring programs, Population Management programs, and other forms of supervision for noncitizens which are administered by DHS and third party contractors, including non-government actors.

**Record(s):** For purposes of this request, the term "records" includes all records or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, spreadsheets, videotapes, audiotapes, e-mails, text messages, social media communication, online messaging, faxes, files, guidance, guidelines, evaluations, legal opinions, instructions, analyses, directives, memoranda, agreements, notes, orders, contracts, policies, procedures, protocols, reports, rules, manuals, technical specifications, training manuals, and studies. This includes records kept in written form, electronic format on computers and/or other electronic storage devices, electronic communications and/or videotapes, and any other sub-regulatory guidance.

Throughout this request, if and when responsive records involve individuals who were ordered removed, detained, released, and/or placed in Alternatives to Detention ("ATD") programs or involve policies related to those agency actions prior to the formation of DHS in 2003, the term "DHS" and/or "ICE" shall include the former Immigration and Naturalization Services ("INS"). Any reference to Enforcement and Removal Operations ("ERO") shall include its predecessor division, Detention and Removal Operations ("DRO").

### C. Requests

Requesters, through this FOIA, seek the following records prepared, received, transmitted, collected, and/or maintained by ICE from January 20, 2017 to the date of this request.

1. Any and all records received, maintained, or created by ICE related to the creation, implementation or oversight of Population Management, ATD, and other supervision programs, including but not limited:

---

[2] Michael E. Miller, "They fear being deported. But 2.9 million immigrants must check in with ICE anyway." THE WASHINGTON POST, Apr. 25, 2019, 10:01 AM, https://www.washingtonpost.com/local/they-fear-being-deported-but-29-million-immigrants-must-check-in-with-ice-anyway/2019/04/25/ac74efce-6309-11e9-9ff2-abc984dc9eec_story.html.

Freedom of Information Act Request
December 17, 2019
Page 4

    a. Applicable standards for community-based supervision programs;
    b. Policies, procedures, guidelines, instructions, quotas or other materials concerning ICE oversight or involvement in Population Management, ATD or other supervision programs;
    c. Training manuals, guides, memoranda, and other documents used to train ICE officers, DHS employees, or third-party contractors in the administration, regulation, or provision of Population Management, ATD, and other supervision programs;
    d. Policies, practices, guidelines, protocols, and guidance for retention of any and all records pertaining to each person under a supervision program;
    e. Policies, practices, guidelines, protocols, and guidance for securing a passport, travel document or any other document or documentation from individuals under a supervision program;
    f. Policies, practices, guidelines, protocols, and guidance applicable when individuals on supervision programs do not present a passport, travel document, or any other document or documentation requested or demanded by ICE officials and/or private companies contracted to provide ATD services;
    g. Policies, practices, guidelines, protocols, and guidance relating to ICE's selection of the terms by which individuals must comply with their supervision programs, including but not limited to the frequency of in-person check-ins, scheduling and re-rescheduling of check-ins, imposition or removal of ankle monitors (including due to medical conditions or hardship), home visits, telephonic monitoring, and documentation individuals must bring to check-ins;
    h. A randomized sampling of individualized supervision contracts;
    i. Policies, practices, guidelines, protocols, and guidance relating to consequences for failure to comply with the terms of an individualized supervision program;
    j. Policies, practices, guidelines, protocols, and guidance relating to the level of supervision and conditions imposed on individuals participating in supervision programs;
    k. Policies, practices, guidelines, protocols, and guidance relating to when ICE requests or demands assistance from family members in obtaining documents, and any other authority to require or demand third-party cooperation in obtaining documents;
    l. Policies, practices, guidelines, protocols, and guidance relating to the circumstances under which an ATD participant's contact list may be contacted;
    m. Policies, practices and protocols for accompaniment to in-person check-ins by third parties, including:
        i. Family;
        ii. Friends;
        iii. Faith and community leaders;
        iv. Legal practitioners; and
        v. Other advocates;

Freedom of Information Act Request
December 17, 2019
Page 5

- n. Policies, practices, guidelines, protocols, and guidance relating to scheduling of check-ins on Saturdays, Sundays, and other times outside of normal business hours;
- o. Policies, practices, guidelines, protocols, and guidance regarding individuals' right or ability to communicate through any medium to a person or persons of their choosing after being arrested and detained at or immediately following a check-in;
- p. Instructions, policies, practices, protocols, and communications issued or sent by ICE to private security contractors, including but not limited to those who monitor the waiting room for noncitizens checking-in with ICE pursuant to supervision programs;
- q. Policies, practices, guidelines, protocols, guidance and communications relating to issuance of administrative stays of removal for individuals subject to supervision programs;
- r. Policies, practices, guidelines, protocols, and guidance relating to fielding requests for and scheduling a reasonable fear interview (RFI) for OSUP participants;
- s. Any policies, practices, guidelines, protocols, or guidance differentiating treatment among OSUP participants;
- t. Any internal quotas relating to the detention and/or re-detention of OSUP participants; and
- u. Any policy, practice, guidelines, protocols, or guidance that cite to 8 U.S.C. § 1231(a)(3) *et seq* or 8 C.F.R. § 241.5(a) *et seq*.

2. Policies, practices, guidelines, protocols, and guidance for cases for which there is demonstrated interest from the press, reporters, politicians, or community leaders;
3. Any records relating to or concerning agreements or contracts between any private entity or entities and ICE for the procurement of services and/or technology used by ICE in the ATD program during the period from January 20, 2017 to present. This request includes any agreements or contracts between providers of ATD equipment and services – such as BI Incorporated, the Geo Group Incorporated, or any contracting company – and ICE that require ICE to purchase a minimum quantity of ATD-related equipment or a minimum amount of ATD-related services. This request additionally includes rental agreements between providers of ATD equipment and services – such as BI Incorporated, the Geo Group Incorporated, and any contracting company – and property owners for ISAP locations in the New York City area;
4. Any and all "ISAP Monthly Progress Reports" received by ICE within the requested time period;
5. Records referring to efforts to standardize supervision reporting requirements, including but not limited to continuations of a November 12, 2004 memorandum addressed to Field Office Directors from Victor X. Cerda, Acting Director, with the subject line, "Orders of Supervision," with the Purpose section, "To standardize the reporting requirements for those aliens released under an Order of Supervision (OSUP) or on an Order of Release on Recognizance (ROR)";
6. Aggregate records and data summarizing the number of individuals participating in supervision programs, including but not limited to:

5

Freedom of Information Act Request
December 17, 2019
Page 6

   a. Total number of those participating in supervision programs, separated by the type of program and/or whether those individuals are pre- or post-final order of removal;
   b. Demographics of those participating in supervision programs – including but not limited to race, gender, nationality, and age – separated by type of program and/or whether those individuals are pre- or post-final order of removal; and
   c. Number of noncitizens who have been re-detained while participating in a supervision program, separated by type of program, whether those individuals are pre- or post-final order of removal, and reason for re-detention;
7. Handbooks and policy manuals referring to ATDs and OSUPs specifically;
8. Any and all records received, maintained, or created by ICE related to the mobile phone application "BI SmartLink" and its development, including but not limited to:
   a. Policies, practices, protocols, guidelines, and communications regarding the use of facial recognition technology; and
   b. All data sets collected using the application;
9. Policies, practices, guidelines, protocols, and guidance regarding patrolling, observing, or waiting outside of immigration courtrooms by ICE officers;
10. Any and all data related to risk classification assessments ("RCA") for individuals reporting to the New York ICE Field Office during the relevant time period, including but not limited to, percentage of individuals classified as a low, medium or high flight risk and low, medium or high public safety risk; percentage of individuals with a final order of deportation classified as a low, medium or high flight risk and a low, medium or high public safety risk; number of instances in which ICE supervisors overrode the RCA recommendation and the attendant outcomes; and
11. Statement of Work between private contractors administering supervision programs and DHS.

The scope of the search should not be limited to ICE-originated records and should be construed to include records that are currently in the possession of any U.S. government contractor for purposes of records management.

If, under applicable law, any of the information requested is considered exempt, please describe in detail the nature of the information withheld, the specific exemption or privilege upon which the information is withheld, and whether the portions of withheld documents containing non-exempt or non-privileged information have been provided.

Thank you in advance for your response to this request within twenty business days, as the FOIA requires. *See* 5 U.S.C. § 552(a)(6)(A)(i).

6

Freedom of Information Act Request
December 17, 2019
Page 7

### D. Format of Production

Requesters seek both paper and electronic records produced in the following format:

- Paper records; and
- Electronic records in PDF format, electronically searchable wherever possible.
    - Each paper record in a separately saved file;
    - 'Parent-child' relationships maintained, meaning that Requesters must be able to identify the attachments with emails;
    - Any data records in native format (i.e., Excel spreadsheets in Excel);
    - Emails should include BCC and any other hidden fields, with any other metadata preserved.

### E. Request for Waiver of Fees

The Requesters ask that all fees associated with this FOIA request be waived. Requesters are not-for-profit organizations that work on behalf of immigrant communities. Both Requesters are entitled to a waiver of all costs because disclosure of the information is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). *See also* 6 C.F.R. § 5.11(k) (records furnished without charge or at a reduced rate if the information is in the public interest, and disclosure is not in commercial interest of institution). A fee waiver also would fulfill Congress' intent in amending the FOIA. *See Judicial Watch, Inc. v. Rossoti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (discussing that Congress intended the FOIA to be construed broadly to favor fee waiver for noncommercial requests).

Requesters will make any information that they receive as a result of this FOIA request available to the public, including the press, at no cost. Disclosure in this case therefore meets the statutory criteria, and a fee waiver would fulfill Congress' legislative intent in amending the FOIA. *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers of noncommercial requesters'").

In the alternative, if no fee waiver is granted and the fees exceed $250.00, please contact the Requesters' undersigned counsel to obtain consent to incur additional fees. Processing fees should be limited pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("[F]ees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by ... a representative of the news media.").

1. <u>Disclosure of the Information is in the Public Interest</u>

Disclosure of the requested information will contribute significantly to the public understanding of government operations and activities regarding operation of ATD programs,

Freedom of Information Act Request
December 17, 2019
Page 8

OSUPs, and other forms of supervision for noncitizens. 6 C.F.R. § 5.11(k)(2). The requested information impacts millions of noncitizens who have lived and worked in the United States for many years, as well as their family members and community members who may be affected by the conditions of their supervision.[3]

The information will also assist elected officials in responding to the concerns of their constituencies and in instructing communities they serve how to best respond to the imposition of supervision and any changes later imposed on the conditions of supervision. The information requested is also relevant to any educational initiatives, whether hosted by elected officials or nonprofits, that seek to inform noncitizens and their families of their rights at check-ins with ICE and third party contractors.

Requesters have the capacity to disseminate widely the requested information to the public. Requesters will review, analyze, and/or summarize the information obtained through this FOIA request. In addition, IDP and NSC will speak publicly and publish practice advisories or related written materials to be shared with the public, legal practitioners, advocates, and the academic community. IDP will make the information available through its website, which is accessible by members of the public. IDP will additionally disseminate relevant information through its Criminal-Immigration Helpline, which operates 24/7 to provide advice to noncitizens nationwide. NSC will additionally disseminate relevant information in its direct interactions with noncitizens. Finally, IDP and NSC have frequent contact with national print and electronic news media and plan to share with interested media the information gleaned from the FOIA disclosures.

The information sought is of great interest to the public at large, but not currently available in the public domain.

2. <u>Disclosure of the Information is Not Primarily in the Commercial Interest of the Requesters</u>

Requesters are a tax-exempt, not-for-profit charitable organization and a coalition of individuals that provides free services. IDP is a 501(c)(3) organization. Attorneys, noncitizens, activists, and any other interested members of the public may obtain information about immigration-related issues through its distribution of written materials, including IDP's website, through public and educational appearances, and through operation of its Criminal-Immigration Helpline. NSC is an immigrant-led network providing not-for-profit direct services to immigrants and their loved ones. Its services are offered free of cost to thousands of noncitizens on a daily basis, primarily through its accompaniment program and pro se immigration clinics. The requested information is sought for the purpose of disseminating it to members of the public, including through posting it on IDP's website and other publications, and not for the purpose of commercial gain.

---

[3] *Id.*

Freedom of Information Act Request
December 17, 2019
Page 9

### F. Expedited Processing

Expedited processing is warranted because there is "an urgency to inform the public about an actual or alleged federal government activity," and the request is made by entities "primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II). This request demonstrates that both criteria are satisfied. 6 C.F.R. § 5.5(d)(3).

There is an urgent need to obtain the requested information, which is not publicly available. The records described above would accurately reflect the scope, details, and policies governing noncitizen check-ins under supervision programs nationally. It is critical to obtain this information because it will assist in helping prepare noncitizens for their check-ins and in advising them of their legal rights during such processes.[4]

The Requesters are "primarily engaged in disseminating information" and thus warrant expedited processing. 5 U.S.C. § 552(a)(6)(E)(v)(II); *see also* 6 C.F.R. § 5.5(d)(3). DHS regulations specifically provide that "information dissemination . . . need not be [a requester's] sole occupation." 6 C.F.R. § 5.5(e)(3). IDP is an expert resources and advocacy organization that monitors the intersection of the criminal justice system and immigration system.[5] It disseminates information about these issues to policy makers, attorneys, the general public, and affected communities, and these materials routinely include information obtained through FOIA requests.[6] IDP publishes newsletters, know-your-rights pamphlets, and reports on immigration issues.[7]

NSC is a New York City-based coalition of individuals and faith communities that directly supports immigrants facing deportation through community support, activism, and pro se legal clinics. It provides legal support and referrals through programs and clinics staffed by volunteer lawyers and trained laypeople who spread knowledge of immigrants' rights; assist with

---

[4] Michael E. Miller, "They fear being deported. But 2.9 million immigrants must check in with ICE anyway." THE WASHINGTON POST, Apr. 25, 2019, 10:01 AM, https://www.washingtonpost.com/local/they-fear-being-deported-but-29-million-immigrants-must-check-in-with-ice-anyway/2019/04/25/ac74efce-6309-11e9-9ff2-abc984dc9eec_story.html.

[5] Mission, IMMIGRANT DEFENSE PROJECT, https://www.immigrantdefenseproject.org/about.

[6] IDP Resources, IMMIGRANT DEFENSE PROJECT, https://www.immigrantdefenseproject.org/resources2/; Immigrant Defense Project, Defend Against ICE Raids and Community Arrests (2017), https://www.immdefense.org/raids-toolkit/ (including documents obtained in the *Immigrant Defense Project et al. v. ICE, et al.* FOIA litigation); Immigrant Defense Project, Insecure Communities, Devastated Families; New Data on Immigrant Detention and Deportation Practices in New York City (July 23, 2012), https://www/immigrantdefenseproject.org/wp-content/uploads/2012/08/NYC-FOIA-Report-2012-FINAL-Aug.pdf (data in part provided through FOIA with ICE); ICE Raids FOIA, IMMIGRANT DEFENSE PROJECT, https:/www.immigrantdefenseproject.org/raids-foia/ (information on ICE trainings and practices around home raids, obtained through ongoing FOIA litigation, available online).

[7] Resources for Communities, IMMIGRANT DEFENSE PROJECT, https://www.immigrantdefenseproject.org/category/resources-for-communities/.

Freedom of Information Act Request
December 17, 2019
Page 10

immigration applications; advice on pro se defense at court appearances; and advocate to increase immigrants' access in detention centers to legal defense tools.[8]

**Address for Productions**

Please email responsive documents to Jessica Rofé, Esq., at jessica.rofe@nyu.edu and mail paper copies of these documents to the following address:

Jessica Rofé, Esq.
Washington Square Legal Services, Inc.
245 Sullivan Street, 5th Floor
New York, NY 10012

I certify that the information contained in this request is true and correct to the best of my knowledge. *See* 6 C.F.R. § 5.5(d)(3).

Thank you for your time and attention to this matter. Should you have any questions regarding this request, please contact us at (212) 992-7245.

Sincerely,

Marie Mark, Esq.
Director of Legal Support and Resources
Immigrant Defense Project
40 W. 39th St., 5th Floor
New York, NY 10018
marie@immdefense.org

---

[8] Welcome to New Sanctuary Coalition, NEW SANCTUARY COALITION, https://www.newsanctuarynyc.org/.

Freedom of Information Act Request
December 17, 2019
Page 11

*[signature]*

Janice Hoseine
Director of Programs
New Sanctuary Coalition
239 Thompson Street
New York, NY 10012
janice@newsanctuarynyc.org