**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
|---|---|---|
| THE UPS STORE | THE UPS STORE | THE UPS STORE |
| 9 E 8TH ST | 319 LAFAYETTE ST | 480 AVENUE OF THE AMERICAS |
| NEW YORK ,NY 10003 | NEW YORK ,NY 10012 | NEW YORK ,NY 10011 |

FOLD HERE



**IMMIGRANT RIGHTS CLINIC**
**WASHINGTON SQUARE LEGAL SERVICES, INC.**
**NEW YORK UNIVERSITY SCHOOL OF LAW**
245 SULLIVAN STREET, 5TH FLOOR
NEW YORK, NEW YORK 10012
TEL: 212-998-6430
FAX: 212-995-4031

ALINA DAS
JESSICA ROFÉ
NAOMI SUNSHINE
JESSICA SWENSEN
*Supervising Attorneys*

CAROLA BEENEY
ELIZABETH LEWIS
*Legal Interns*

May 13, 2020

Privacy Office
Attn: FOIA Appeals
U.S. Department of Homeland Security
245 Murray Lane, SW
Mail Stop 0655
Washington, DC 20528-0655

RE: 2020-ICFO-16964

Dear Sir or Madam:

This letter is an appeal regarding request 2020-ICFO-16964 under the Freedom of Information Act ("FOIA") for failure to search adequately for records or produce any records responsive to the request. On December 19, 2019, Washington Square Legal Services, Inc. filed this request on behalf of New Sanctuary Coalition and the Immigrant Defense Project ("the Requesters").

1. Scope of the request:

The request asked for disclosure of all records[1] created from January 20, 2017 to the present relating to the following:
1. Any and all records received, maintained, or created by ICE related to the creation, implementation or oversight of Population Management, ATD, and other supervision programs, including but not limited to:
    a. Applicable standards for community-based supervision programs;
    b. Policies, procedures, guidelines, instructions, quotas or other materials concerning ICE oversight or involvement in Population Management, ATD or other supervision programs;
    c. Training manuals, guides, memoranda, and other documents used to train ICE officers, DHS employees, or third-party contractors in the administration,

---

[1] The term "records" as used herein includes all records or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, videotapes, audiotapes, emails, text messages, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals or studies.

regulation, or provision of Population Management, ATD, and other supervision programs;
d. Policies, practices, guidelines, protocols, and guidance for retention of any and all records pertaining to each person under a supervision program;
e. Policies, practices, guidelines, protocols, and guidance for securing a passport, travel document or any other document or documentation from individuals under a supervision program;
f. Policies, practices, guidelines, protocols, and guidance applicable when individuals on supervision programs do not present a passport, travel document, or any other document or documentation requested or demanded by ICE officials and/or private companies contracted to provide ATD services;
g. Policies, practices, guidelines, protocols, and guidance relating to ICE's selection of the terms by which individuals must comply with their supervision programs, including but not limited to the frequency of in-person check-ins, scheduling and re-rescheduling of check-ins, imposition or removal of ankle monitors (including due to medical conditions or hardship), home visits, telephonic monitoring, and documentation individuals must bring to check-ins;
h. A randomized sampling of individualized supervision contracts;
i. Policies, practices, guidelines, protocols, and guidance relating to consequences for failure to comply with the terms of an individualized supervision program;
j. Policies, practices, guidelines, protocols, and guidance relating to the level of supervision and conditions imposed on individuals participating in supervision programs;
k. Policies, practices, guidelines, protocols, and guidance relating to when ICE requests or demands assistance from family members in obtaining documents, and any other authority to require or demand third-party cooperation in obtaining documents;
l. Policies, practices, guidelines, protocols, and guidance relating to the circumstances under which an ATD participant's contact list may be contacted;
m. Policies, practices and protocols for accompaniment to in-person check-ins by third parties, including:
    i. Family;
    ii. Friends;
    iii. Faith and community leaders;
    iv. Legal practitioners; and
    v. Other advocates;
n. Policies, practices, guidelines, protocols, and guidance relating to scheduling of check-ins on Saturdays, Sundays, and other times outside of normal business hours;
o. Policies, practices, guidelines, protocols, and guidance regarding individuals' right or ability to communicate through any medium to a person or persons of their choosing after being arrested and detained at or immediately following a check-in;
p. Instructions, policies, practices, protocols, and communications issued or sent by ICE to private security contractors, including but not limited to those who monitor

      the waiting room for noncitizens checking-in with ICE pursuant to supervision programs;
- q. Policies, practices, guidelines, protocols, guidance and communications relating to issuance of administrative stays of removal for individuals subject to supervision programs;
- r. Policies, practices, guidelines, protocols, and guidance relating to fielding requests for and scheduling a reasonable fear interview (RFI) for OSUP participants;
- s. Any policies, practices, guidelines, protocols, or guidance differentiating treatment among OSUP participants;
- t. Any internal quotas relating to the detention and/or re-detention of OSUP participants; and
- u. Any policy, practice, guidelines, protocols, or guidance that cite to 8 U.S.C. §1231(a)(3) et seq or 8 C.F.R. § 241.5(a) et seq.
2. Policies, practices, guidelines, protocols, and guidance for cases for which there is demonstrated interest from the press, reporters, politicians, or community leaders;
3. Any records relating to or concerning agreements or contracts between any private entity or entities and ICE for the procurement of services and/or technology used by ICE in the ATD program during the period from January 20, 2017 to present. This request includes any agreements or contracts between providers of ATD equipment and services – such as BI Incorporated, the Geo Group Incorporated, or any contracting company – and ICE that require ICE to purchase a minimum quantity of ATD-related equipment or a minimum amount of ATD-related services. This request additionally includes rental agreements between providers of ATD equipment and services – such as BI Incorporated, the Geo Group Incorporated, and any contracting company – and property owners for ISAP locations in the New York City area;
4. Any and all "ISAP Monthly Progress Reports" received by ICE within the requested time period;
5. Records referring to efforts to standardize supervision reporting requirements, including but not limited to continuations of a November 12, 2004 memorandum addressed to Field Office Directors from Victor X. Cerda, Acting Director, with the subject line, "Orders of Supervision," with the Purpose section, "To standardize the reporting requirements for those aliens released under an Order of Supervision (OSUP) or on an Order of Release on Recognizance (ROR)";
6. Aggregate records and data summarizing the number of individuals participating in supervision programs, including but not limited to:
   - a. Total number of those participating in supervision programs, separated by the type of program and/or whether those individuals are pre- or post-final order of removal;
   - b. Demographics of those participating in supervision programs – including but not limited to race, gender, nationality, and age – separated by type of program and/or whether those individuals are pre- or post-final order of removal; and
   - c. Number of noncitizens who have been re-detained while participating in a supervision program, separated by type of program, whether those individuals are pre- or post-final order of removal, and reason for re-detention;
7. Handbooks and policy manuals referring to ATDs and OSUPs specifically;

8. Any and all records received, maintained, or created by ICE related to the mobile phone application "BI SmartLink" and its development, including but not limited to:
    a. Policies, practices, protocols, guidelines, and communications regarding the use of facial recognition technology; and
    b. All data sets collected using the application;
9. Policies, practices, guidelines, protocols, and guidance regarding patrolling, observing, or waiting outside of immigration courtrooms by ICE officers;
10. Any and all data related to risk classification assessments ("RCA") for individuals reporting to the New York ICE Field Office during the relevant time period, including but not limited to, percentage of individuals classified as a low, medium or high flight risk and low, medium or high public safety risk; percentage of individuals with a final order of deportation classified as a low, medium or high flight risk and a low, medium or high public safety risk; number of instances in which ICE supervisors overrode the RCA recommendation and the attendant outcomes; and
11. Statement of Work between private contractors administering supervision programs and DHS.

2. Response to the request:

On January 10, 2020, the ICE FOIA Office sent an email to Washington Square Legal Services, Inc. attorney Jessica Rofé providing the reference number 2020-ICFO-16964. *See* Exh. A, Email from ICE FOIA Office, "Re: ICE FOIA Case Number 2020-ICFO-16964" (Jan. 10, 2020). The ICE FOIA Office additionally approved the request for fee waiver and invoked the agency's 10-day extension, *see* 5 U.S.C. § 552(a)(6), thereby requiring a response no later than February 20, 2020.[2] *Id.* Since that email, neither Washington Square Legal Services, Inc. nor the Requesters have received further communication from ICE or DHS regarding this request. The Requesters were not notified of a determination regarding the request. The Requesters were not made aware of any search for records. No records were produced pursuant to this request.

3. Failure to promptly provide determination and notify of right to appeal:

Under FOIA, 5 U.S.C. § 552, agencies of the federal government are required to release requested records to the public unless one or more specific statutory exemptions apply. An agency must respond to a requester making a FOIA request within 20 working days, 5 U.S.C. § 552(a)(6)(A)(i), though in "unusual circumstances," an agency may delay its response to a FOIA request for up to 10 working days, but must provide notice and "the date on which a determination is expected to be dispatched," 5 U.S.C. § 552(a)(6)(B). The agency's determination must notify the Requesters of at least the agency's determination whether or not to fulfill the request and the Requesters' right to appeal the agency's determination to the agency head. 5 U.S.C. § 552(a)(6)(A)(i). Specifically, an agency's determination must: (i) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (ii) inform the Requesters that they can appeal whatever portion of the "determination" is adverse. *See Citizens for Responsibility & Ethics in Wash. V. FEC*, 711 F.3d 180, 186 (D.C. Cir. 2013).

---

[2] The agency's website indicates a projected response no later than February 15, 2020.

In regards to this request, the only communication the Requesters have received from the agency is the above-mentioned email, in which the agency invoked a 10-day extension, extending the date by which the agency was required to respond to February 20, 2020. As of the date of this appeal, no determination has been provided to the Requesters. There is no evidence that ICE has gathered and reviewed the documents the Requesters requested; ICE has not determined or communicated the scope of documents it intends to produce and withhold, nor the reasons for withholding said documents; nor has ICE informed the Requesters of their right to appeal. This failure to notify the Requesters of the agency's determination violates FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and the corresponding agency regulations.

4. <u>Failure to search for responsive documents:</u>

Under FOIA, federal agencies are required to make reasonable efforts to search for requested records. 5 U.S.C. § 552(a)(3)(C). Searching involves reviewing, "manually or by automated means, agency records for the purpose of locating those records which are responsive to a request." 5 U.S.C. § 552(a)(3)(D). DHS regulations provide that the agency and its components must complete the search pursuant to a FOIA request where it can do so under a "business as usual" approach, meaning that it has the capability to do so without "significant expenditure of monetary or personnel resources." 6 C.F.R. § 5.4(i)(2).

There is no evidence that ICE has begun to search for the records requested by the Requesters, or that ICE has gathered and reviewed any records pursuant to this FOIA request. Thus, the agency has violated the Requesters' rights under FOIA, 5 U.S.C. § 552(a)(3), and ICE's own regulations, 6 C.F.R. § 5.4(i).

5. <u>Failure to produce responsive documents:</u>

Federal agencies are required to make records properly requested pursuant to FOIA promptly available to the Requesters. 5 U.S.C. § 552(a)(3)(A); *see also* 6 C.F.R. § 5.6(c).

Through this request, the Requesters properly asked for records within ICE's control. ICE has neither produced any records to the Requesters in response to their request, nor made any explicit and justified claims of statutory exemption. Further, ICE has provided no status update on the Requesters' FOIA request. The agency's failure to promptly make records available in response to the Requesters' request violated the Requester's rights under FOIA, 5 U.S.C. § 552(a)(3).

6. <u>Failure to respond to request for or provide expedited processing:</u>

"Requests and appeals shall be processed on an expedited basis whenever it is determined that they involve . . . [a]n urgency to inform the public about an actual or alleged Federal Government activity, if made by [entities which are] primarily engaged in disseminating information." 28 C.F.R. § 16.5(e)(1); *see also* 5 U.S.C. § 552(a)(6)(E)(v)(II). "It is not enough that, within the relevant time period, the agency simply decide [sic] to later decide." *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 186 (D.C. Cir. 2013).

The Requesters properly requested expedited processing pursuant to this FOIA request. The Requesters are "primarily engaged in disseminating information," 6 C.F.R. § 5.5(e)(1)(ii), and pursuant to DHS regulations, this "need not be [the Requesters'] sole occupation," 6 C.F.R. § 5.5(e)(3). As stated in the original request, there is an urgent need to obtain the requested information, because it will assist in helping prepare noncitizens for their check-ins and advising them of their legal rights during such processes.[3] This is true notwithstanding the current, temporary suspension of in-person check-ins due to COVID-19. Electronic and telephonic alternative-to-detention programs continue unimpeded at this time, *see* ICE Guidance on COVID-19, Overview & FAQs, https://www.ice.gov/coronavirus, so urgency with regards to these programs is clearly unaffected. In addition, in-person check-ins are likely to resume as soon as practicably possible, *see id.*, and the Requesters must invest time and resources in reviewing the documents produced by ICE and in producing materials for widespread dissemination. Thus, it is equally urgent that the Requesters receive records regarding in-person check-ins so that they are able to widely disseminate the requested information by the time check-ins resume. Further, policy is subject to particularly rapid change in response to the COVID-19 crisis, so the need for this information is all the more crucial and urgent during the current public health emergency.

The Requesters are able and intend to widely disseminate the requested information. The Immigrant Defense Project is an expert resources and advocacy organization, which disseminates information to policy makers, attorneys, the general public, and affected communities.[4] New Sanctuary Coalition is a New York City-based coalition of individuals and faith communities that directly supports immigrants facing deportation through programs and clinics staffed by volunteer lawyers and trained laypeople who, in part, spread knowledge of immigrants' rights.[5] ICE has allowed 140 days to elapse since the initial FOIA request without making any determination or producing any documents to the request. This is well over the 30-day limit allotted for expedited processing under 5 U.S.C. § 552(a)(6)(E). Thus, ICE has violated the Requesters' rights to expedited processing under FOIA, 5 U.S.C. § 552(a)(6)(E), and ICE's own regulations, 6 C.F.R. § 5.5(e).

We look forward to a timely response to our appeal and the results of a search of relevant records.

Thank you for your attention to this matter.

---

[3] Michael E. Miller, "They fear being deported. But 2.9 million immigrants must check in with ICE anyway." THE WASHINGTON POST, Apr. 25, 2019, https://www.washingtonpost.com/local/they-fear-being-deported-but-29-million-immigrants-must-check-in-with-ice-anyway/2019/04/25/ac74efce-6309-11e9-9ff2-abc984dc9eec_story.html.
[4] IDP Resources, IMMIGRANT DEFENSE PROJECT, https://immigrantdefenseproject.org/resources2/.
[5] Welcome to New Sanctuary Coalition, NEW SANCTUARY COALITION, https://www.newsanctuarynyc.org/.

Sincerely,

Jessica Rofé
Jessica Swensen
*Supervising Attorneys*
Carola Beeney
Elizabeth Lewis
*Legal Interns*

Exhibit A